UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00366-FDW-DSC

| | | |
|---|---|---|
| MAURICIA HARRINGTON-WALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CITY OF MONROE, NC, and MARTEL | ) | ORDER |
| HARRISON, individually and officially, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 8), which has been fully briefed by the parties (Docs. Nos. 9, 11, 13), as well as Plaintiff's Motion for Judicial Notice (Doc. No. 14), also fully briefed by the parties (Docs. Nos. 15, 17, 18). In addition to the written pleadings, the Court heard oral argument on the pending motions on Monday, June 8, 2020, and subsequently took this matter under advisement. For the reasons set forth below, the Court GRANTS both Plaintiff's Motion for Judicial Notice (Doc. No. 14) and Defendants' Motion for Summary Judgment (Doc. No. 8).

## I. BACKGROUND

Plaintiff's Complaint asserts multiple causes of action against Defendants City of Monroe and Martel Harrison, a former police officer with the Monroe Police Department. These claims all arise out of Plaintiff's arrest for the theft of items from a hospital employee's purse and the subsequent use of the victim's credit card. Plaintiff's Complaint asserts claims for malicious prosecution by Harrison, unlawful seizure and prosecution in violation of the Fourth Amendment by Harrison, and negligence by both Defendants. (Doc. No. 1-1.) Both Defendants have moved for summary judgment on all claims against them. (Doc. No. 8.) The Court notes at the outset

1

that the parties mostly agree on the facts of this case.  Where disputes exist, the Court construes

the evidence in the light most favorable to Plaintiff.  Tolan v. Cotton, 572 U.S. 650, 657, 134 S.

Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) (recognizing "a court must view the evidence in the light

most favorable to the opposing party") (quotation and citation omitted).

On December 23, 2016, Anita Byrum, an employee with Atrium Health Union ("Hospital")

called 911 to report that sometime that morning,[1] someone stole her wallet and mobile phone out

of the employee break room in the surgery section of the Hospital.  Around noon, Defendant

Harrison responded on behalf of the Monroe Police Department. Harrison had been an officer for

approximately 10 months and had not previously led an investigation.  Upon arrival at the Hospital,

Harrison spoke with Byrum, and while they were talking, Byrum received notification that her

credit card had just been used at a nearby Target store.  Harrison also spoke with the Hospital's

security officer and was unable to obtain any surveillance footage from the break room.

In response, Harrison drove to the Target and had loss prevention staff pull security camera

footage of the suspect. The footage showed a woman who was linked to the purchase wearing a

solid-colored top and glasses, pushing a shopping cart out of the store to a white SUV, and leaving

in a white SUV.  The security footage did not reveal the SUV's license plate.  Harrison obtained a

"grainy" still shot photograph from the security camera footage showing the front of the suspect

as she left the store.  He returned to the Hospital, met individually with three employees, and

showed them each the photograph from the Target surveillance video.  Harrison documented what

---

[1] The Court acknowledges a discrepancy in the evidence as to the correct time of the alleged incident, whereby Harrison's incident report indicates the theft took place between "1030 a.m. and 11:30 p.m." (which Defendants have consistently maintained is a typographical error that should read "10:30 a.m. to 11:30 a.m."), while Harrison's body cam recording indicated Byrum stated the incident occurred between 11 a.m. and 11:40 a.m.  Compare Docs. Nos. 11-3, pp.2, 40, with Doc. No. 8-1, p. 1.  For purposes of this Order, the Court finds that based on the full record before the Court, no reasonable juror could conclude the incident took place anytime other than the morning and noon hour. In so ruling, the Court does not consider credibility or weigh the evidence in concluding that no question of fact exists as to whether the incident occurred sometime in the morning and noon hours of December 23, 2016.

2

they told him in the Incident Report he prepared.  One employee said the image was "Moe," who was a former hospital employee.  Another employee also identified the person in the picture as "Moe." A third employee, a former coworker of "Moe," stated the person in the picture was Ms. Mauricia "Moe" Harrington and showed Harrison a picture from Ms. Harrington's Facebook profile.  In his Incident Report, Harrison indicated he believed the glasses worn in the Facebook profile picture matched the glasses the suspect wore at Target.  Before leaving the Hospital, Harrison asked the first employee what kind of vehicle "Moe" drove, and the employee indicated a white SUV.  The employee also indicated Plaintiff had been at the hospital the prior week visiting former co-workers.  Harrison did not share the Facebook profile picture with anyone at Target, and he did not contact the Hospital's human resources department to assess the accuracy of the employees' identification of Plaintiff as a suspect or former employee.

The following day, Harrison called Plaintiff and explained he wanted to interview her in connection with the larceny.  Plaintiff voluntarily arrived at the Monroe Police Department for an interview.  Plaintiff explained that on the day of the larceny, she was wearing blue jean leggings, tennis shoes, a grey cap, and a white Dallas Cowboys shirt, which was different than the clothing in the Target security footage.  Plaintiff also explained she had driven a wheelchair-bound friend in her gold Toyota Camry to a Bojangles at 9 a.m. so he could have breakfast with his adult children. Plaintiff said she left her friend at Bojangles and drove to purchase gas at a nearby BP gas station.  She then returned to Bojangles to drop off a cup the friend had left in her car and afterwards drove to two separate addressees where she believed an Army Surplus Store was located.  Plaintiff stated that upon learning no such store was open at those locations, she drove to a Rainbow clothing store on Independence Boulevard in Charlotte.  Plaintiff told Harrison that while she was shopping at the Rainbow store, her friend contacted her to say he was ready to be

3

picked up from Bojangles. Plaintiff explained she purchased merchandise at Rainbow and returned to Bojangles. Once back at Bojangles, Plaintiff purchased food through the drive thru, picked up her friend, and returned to her house, where she stated she remained the rest of the day.

During this interview, Plaintiff provided Harrison with two receipts: one from BP, timestamped on December 23, 2016, at 9:08 a.m.; and the second from Rainbow, timestamped on December 23, 2016, at 10:28 a.m. Plaintiff also showed Harrison her cell phone's GPS, which stored the Army Surplus Stores' addresses and evidence that her friend had contacted her for pickup from Bojangles. Plaintiff also provided her friend's contact information to Harrison.

Harrison continued his investigation. The Hospital was unable to retrieve video footage of the Hospital entrance or hallways around the time of the theft. Harrison visited the Bojangles identified by Plaintiff, where an employee replayed the video footage of the drive-through lane around 11 a.m. on December 23. Harrison watched almost an hour of footage and observed a white SUV in the drive-through that Harrison concluded looked like the SUV captured on the Target surveillance. The Bojangles camera footage did not show a visible license plate.

As part of his investigation, Harrison did not interview any Bojangles employees to see if they recognized Plaintiff, a gold Camry from that day, the suspect in Target's grainy surveillance images, or the woman in the Facebook picture. Harrison did not visit the BP or Rainbow, the stores where Plaintiff had produced receipts from her visits on the day of the larceny. Despite receiving the contact information from Plaintiff during her interview, Harrison did not contact Plaintiff's friend with whom she asserted she had been with on the day of the larceny.

On December 29, 2016, Harrison appeared before a Union County Magistrate to present his investigation in a probable cause hearing for the issuance of arrest warrants for Plaintiff. Harrison testified under oath, and while the record is unclear as to what "exactly" he told the

4

magistrate, Harrison testified in his deposition that he told them "what he had" learned from his investigation, although he is unsure as to whether he also testified to Plaintiff's statements as to her whereabouts on the morning of December 23, 2016, or whether he provided Plaintiff's receipts from BP or Rainbow to the magistrate. (Doc. No. 11-3, p. 48; but see Doc. No. 8-1, p. 4 ("Although I did not consider the friend [Plaintiff] told me about to be an alibi witness—given how she could have still committed the theft after picking him up at Bojangles—I shared with Magistrate Truslow what [Plaintiff] told me about taking the friend to and from Bojangles.")). The magistrate asked a few questions and issued arrest warrants charging Plaintiff with the larceny and fraudulent purchases made at Target with the stolen credit card. After providing this testimony to the magistrate and obtaining the arrest warrant, Harrison prepared a Felony Case Summary to be used by the prosecutor. Harrison did not serve the warrants, testify before the grand jury, or have any further involvement in the case or with Plaintiff. He resigned from the Monroe Police Department in July 2017 to accept a position with the District of Columbia Housing Authority Office of Public Safety.

Plaintiff was arrested on December 30, 2016, and after she bailed out of jail, she visited the Monroe Police Department to speak to Harrison's supervisors. Plaintiff contends she restated her alibi, maintained her innocence, and explained she was being wrongly accused. Plaintiff's affidavit submitted in opposition to the motion at bar indicates Harrison's supervisors took no action and instead informed her that the charges would have to be resolved through the court system. (Doc. No. 11-4, p. 4).

A grand jury indicted Plaintiff in February 2017 on the counts that formed the basis for the arrest warrants. Plaintiff refused a plea deal, asserting her innocence. In December 2017, the Union County District Attorney dismissed all the indictments, noting "Defendant has provided an

5

alibi witness and an affidavit testifying the defendant was not present at the scene of the offenses at the date and time in question and was instead with the witness (Timothy Little); evidence insufficient to prove case beyond a reasonable doubt." (Doc. No. 11-11, pp. 1-4.) Plaintiff subsequently filed the instant action against Harrison and the Monroe Police Department.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Hupp v. Cook, 931 F.3d 307, 317 (4th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Libertarian Party of Va., 718 F.3d at 313 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]he nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997)). "If there are genuine issues of material fact, a court should not weigh the evidence. But where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Perkins v. Int'l Paper Co., 936 F.3d 196, 205 (4th Cir. 2019) (citations and quotations omitted).

## III. ANALYSIS

A.      **Plaintiff's Claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment**

The Court begins its analysis with Plaintiff's only claim under federal law: Count Two,

which asserts a claim pursuant to 42 U.S.C. § 1983 for Harrison's unreasonable seizure of her

person in violation of the Fourth Amendment of the United States Constitution.

> "[A]llegations that an arrest made pursuant to a warrant was not supported by
> probable cause, or claims seeking damages for the period after legal process
> issued"—e.g., post-indictment or arraignment—are considered a § 1983 malicious
> prosecution claim. Brooks v. City of Winston-Salem, 85 F.3d 178, 182 (4th Cir.
> 1996). Such a claim "is properly understood as a Fourth Amendment claim for
> unreasonable seizure which incorporates certain elements of the common law tort."
> Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (quoting Lambert v.
> Williams, 223 F.3d 257, 261 (4th Cir. 2000)). To succeed, a plaintiff must show
> that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process
> unsupported by probable cause, and (3) criminal proceedings terminated in [the]
> plaintiff's favor." Id.

Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 555 (4th Cir. 2017), as

amended (Aug. 22, 2017); see also Hupp v. Cook, 931 F.3d 307, 323–24 (4th Cir. 2019).

### 1. Probable Cause

Here, the parties do not contest the first or third elements, and thus, summary judgment

hinges on the second element: whether probable cause existed to arrest Plaintiff. The Fourth

Circuit has explained:

> "Probable cause is determined by a 'totality-of-the-circumstances' approach."
> Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017) (citing Illinois v. Gates, 462
> U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The inquiry "turns on two
> factors: 'the suspect's conduct as known to the officer, and the contours of the
> offense thought to be committed by that conduct.'" Id. (quoting Graham v. Gagnon,
> 831 F.3d 176, 184 (4th Cir. 2016)). While we look to the information available to
> the officer on the scene at the time, we apply an objective test to determine whether
> a reasonably prudent officer with that information would have thought that probable
> cause existed for the arrest. Graham, 831 F.3d at 185. Evidence sufficient to secure
> a conviction is not required, but probable cause exists only if there is sufficient
> evidence on which a reasonable officer at the time could have believed that
> probable cause existed for the arrest. Wong Sun v. United States, 371 U.S. 471,
> 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Hupp v. Cook, 931 F.3d 307, 318 (4th Cir. 2019). "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It is a practical, nontechnical conception that addresses the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Barrett v. Pae Gov't Servs., Inc., No. 19-1394, 2020 WL 5523552, at *8 (4th Cir. Sept. 15, 2020) (citations and quotations omitted). As the Supreme Court recently explained, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar." D.C. v. Wesby, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018) (internal citations and quotations omitted).

By law, "an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." Smith v. Munday, 848 F.3d 248, 255 (4th Cir. 2017) (quoting Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012) (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975))). Here, a grand jury ultimately returned indictments charging Plaintiff with the offenses for which she was arrested pursuant to the warrant issued by the magistrate based on Harrison's testimony. "Notwithstanding the conclusive effect of the indictments, our precedents instruct that a grand jury's decision to indict will not shield a police officer who deliberately supplied misleading information that influenced the decision." Durham, 690 F.3d at 189 (citations omitted).

Here, Plaintiff contends Harrison supplied misleading and incomplete information in obtaining the arrest warrant. Therefore, the subsequent issuance of the grand jury indictment against Plaintiff is not dispositive.

> A party challenging the veracity of a warrant application must show that the officer(s) deliberately or with a "reckless disregard for the truth" made material false statements in the warrant application, Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), or omitted from that application "material

facts with the intent to make, or with reckless disregard of whether they thereby made, the [application] misleading," United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990) (citation omitted). Reckless disregard can be evidenced by an officer acting "with a high degree of awareness of [a statement's] probable falsity," meaning that "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Miller, 475 F.3d at 627 (quoting Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000)). Omissions are made with reckless disregard when the evidence demonstrates that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." Id. (quoting Beauchamp v. City of Noblesville, Inc., 320 F.3d 733, 743 (7th Cir. 2003)).

Moreover, a plaintiff must demonstrate that the false statement or omission is material, "that is, 'necessary to the [neutral and disinterested magistrate's] finding of probable cause.'" Id. at 628 (quoting Franks, 438 U.S. at 156, 98 S.Ct. 2674). To determine materiality, the Court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." Id. (quoting Wilson, 212 F.3d at 789).

Humbert, 866 F.3d at 556.

Thus, the first issue for this Court is whether Harrison had sufficient knowledge on which he could reasonably believe probable cause existed to support the warrant. The undisputed evidence before this Court demonstrates Harrison's knowledge was sufficient to establish probable cause. After interviewing the victim and working with Target staff to obtain surveillance footage, Harrison's was able to obtain an image of the suspect. The image showed the suspect loading items purchased with victim's credit cards being loaded into a white SUV. When Harrison presented the images to *three* Hospital employees during *three* separate interviews, each employee identified the person in the image as a former Hospital employee named "Moe," which one employee is a nickname for Plaintiff. After one employee showed Harrison Plaintiff's purported Facebook profile image, Harrison concluded the glasses in that photo appeared very similar to the glasses worn by the suspect in the Target video. Furthermore, surveillance footage from the Bojangles drive-through lane, where Plaintiff indicates she visited, showed a white SUV Harrison

9

believed to be similar to the white SUV that he observed in the Target surveillance footage. Harrison's investigation also included a statement from a Hospital employee indicating Plaintiff sometimes drove a white SUV. Therefore, given that Harrison's investigation: 1) reasonably connected Plaintiff to the suspect in the Target surveillance footage; 2) reasonably connected Plaintiff to the white SUV observed in both the Target and Bojangles surveillance footage; and 3) reasonably demonstrated Plaintiff's familiarity of the location inside the Hospital where the larceny occurred, the Court concludes Harrison possessed sufficient information to establish probable cause to issue the arrest warrant.

### 2. Failure to Investigate and Omission of Material Facts

As to the reasonableness of Harrison's belief that probable cause existed, Plaintiff does not contend nor does any evidence purport to show Harrison made any false statements to the magistrate in seeking the application for an arrest warrant. Instead, Plaintiff argues probable cause did not exist because of the "unreasonableness" of Harrison's failure to investigate "readily available" exculpatory evidence and his deliberate or reckless omission of material facts by failing to present the magistrate with Plaintiff's alibi when seeking the arrest warrant.

In Clipper v. Takoma Park, Md, the Fourth Circuit cautioned that a police officer's failure to pursue potentially exculpatory evidence can be actionable but is not outcome determinative on the issue of whether a warrant lacks probable cause. 876 F.2d 17, 19 (4th Cir. 1989). In Clipper, the court affirmed a jury verdict in favor of the plaintiff on his § 1983 claim for a Fourth Amendment violation against officers where the jury considered evidence that officers failed to "pursue[] evidence they might have obtained from individuals who would have told them that the suspect could not have robbed the bank because he was at another place at the time of the robbery." Id. at 20. In rejecting a *per se* ruling for an officer's failure to pursue exculpatory evidence, the

10

court explained the "omission was not, in itself, sufficient to negate probable cause," and instead

was just one factor to consider, along with the other speculative information and investigative

instincts that supported the jury verdict.  Id.  The Fourth Circuit has routinely recognized that an

officer's failure to pursue a potentially exculpatory lead—standing alone—is not determinative:

> Although an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause. Smith v. Reddy, 101 F.3d 351, 357 (4th Cir.1996) (citing Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir.1991)). Reasonable law enforcement officers are not required to "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." Torchinsky, 942 F.2d at 264 (citing Krause v. Bennett, 887 F.2d 362, 371 (2d Cir.1989) ("[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful.")).

Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000); see also  McNulty v. Prince Georges Cty.,

Md., 986 F.2d 1414 (4th Cir. 1993) (recognizing "the decision not to pursue given investigative

leads is but one of the circumstances we will consider in determining the reasonableness of an

officer's decision to obtain an arrest warrant. The weight of such circumstances will, of course,

vary widely depending on the nature of the leads.").

Here, Harrison's failure to contact Plaintiff's friend to verify her alibi or to visit the

Rainbow store or BP to confirm the receipts Plaintiff presented to Harrison are insufficient, as a

matter of law, to negate the probable cause found by the magistrate in issuing the arrest warrant.

As explained above, the evidence before this Court demonstrates Harrison possessed sufficient

knowledge to establish probable cause.  While Harrison was unable to observe or track down the

license plate tags of the white SUVs in the two different surveillance images and conclusively

match the two vehicles or determine their ownership, this alone fails to negate the probable cause

here.  Similarly, Harrison's decision to not confirm Plaintiff's alibi with her friend, who was only

with Plaintiff during the Bojangles drop off and pick up, is also insufficient to negate the probable

11

cause here.  (See Doc. No. 11-2, p. 62.)   Finally, as to Plaintiff's alibi regarding multiple stops, the Court finds Harrison's failure to confirm this portion of her alibi likewise does not negate probable cause.  Plaintiff provided receipts related to stores she visited, and Harrison could not have identified "witnesses" to Plaintiff's purported visit to two Army Surplus stores that did not exist.   Accordingly, the Court rejects Plaintiff's argument that Harrison's failure to pursue potentially exculpatory evidence negates probable cause under the facts known the Harrison.

Next, the Court turns to Plaintiff's arguments regarding Harrison's omissions before the magistrate judge in seeking the arrest warrant.  Taking the evidence in the light most favorable to Plaintiff, the Court *presumes without deciding* that Harrison failed to inform the magistrate of Plaintiff's alibi and other evidence, including receipts, to support her alibi for the morning of December 23, 2016.[2]  Such failure to present Plaintiff's alibi does not *per se* negate the probable cause for the warrant.  See Gomez v. Atkins, 296 F.3d 253, 264 (4th Cir. 2002) ("A reasonable officer, however, [is] not obliged to credit [the suspect's] exculpatory story.").

> [Where a] malicious prosecution claim is based on the Fourth Amendment's right
> to be free from unreasonable seizure, our inquiry is not limited to the validity of the
> warrant application; [a plaintiff] must show that the legal process instituted against
> him was without probable cause. See Graves v. Mahoning County, 821 F.3d 772,
> 775 (6th Cir. 2016) (stating that a plaintiff "may not prevail merely by showing that
> they were arrested with a defective warrant; they must show that they were
> unreasonably seized"); see also Owens v. Balt. City State's Attorneys Office, 767
> F.3d 379, 390 (4th Cir. 2014) ("Malicious prosecution redresses injuries a plaintiff
> sustains as a result of a defendant's improper initiation or maintenance of formal
> proceedings against him.").

---

[2] The Court notes the evidence before the Court indicates this fact is disputed, specifically what information Harrison provided to the magistrate. His deposition indicates he could not recall if he included Plaintiff's purported alibi (Doc. No. 11-2, p. 48), while his affidavit indicates he informed the magistrate that Plaintiff contended she took a friend to and from Bojangles during the time the crime occurred (Doc. No. 8-1, p. 5).  For purposes of summary judgment, the Court takes the evidence in the light most favorable to Plaintiff – that is, Harrison did not provide the magistrate with information or evidence regarding Plaintiff's purported alibi.

Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 559 (4th Cir. 2017), as

amended (Aug. 22, 2017). As the Court already explained above, Harrison possessed adequate

knowledge to constitute probable cause to support Plaintiff's arrest.

Plaintiff also argues Harrison omitted Plaintiff's vehicle registration history in his

presentation to the magistrate and this information – which Harrison knew – was material in

showing Plaintiff did not have a white SUV registered in her name.  However, officers applying

for a warrant are not required to include all information gathered from an investigation or every

piece of exculpatory information.

> An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. However, every decision not to include certain information in the affidavit is "intentional" insofar as it is made knowingly. If . . . this type of "intentional" omission is all that Franks requires, the Franks intent prerequisite would be satisfied in almost every case.
>
> Franks clearly requires defendants to allege more than "intentional" omission in this weak sense. "The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit." United States v. Burnes, 816 F.2d 1354, 1358 (9th Cir. 1987). Franks protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate. See Reivich, 793 F.2d at 961. To obtain a Franks hearing the defendant must show that the omission is the product of a "deliberate falsehood or of reckless disregard for the truth." Franks, 438 U.S. at 171, 98 S.Ct. at 2684. "[M]ere[ ] negligen[ce] in . . . recording the facts relevant to a probable-cause determination" is not enough. Id. at 170, 98 S.Ct. at 2683.

United States v. Colkley, 899 F.2d 297, 300–01 (4th Cir. 1990) (emphasis in original).[3]  The Fourth

Circuit has explained what is required to demonstrate reckless disregard:

---

[3] In Colkley, the Fourth Circuit concluded the defendant failed to show the officer intentionally misled the magistrate when he applied for a warrant and omitted information from his affidavit.  In that case, the officer did not include information that six eyewitnesses were unable to identify the defendant in a photo lineup.  The officer relied on a height description from one witness but did not include contradictory information obtained from another witness stating the assailant was shorter than the defendant.  The Fourth Circuit rejected the plaintiff's argument that the Fourth Amendment requires an affiant to include all potentially exculpatory evidence, noting such a requirement would severely disrupt the warrant process. The court explained, "The rule would place an extraordinary burden on law enforcement officers, who might have to follow up and include in a warrant affidavit every hunch and detail of an investigation in the futile attempt to prove the negative proposition that no potentially exculpatory evidence had

13

> "Reckless disregard" can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. With respect to omissions, "reckless disregard" can be established by evidence that a police officer failed to inform the judicial officer of facts [he] knew would negate probable cause.

Miller v. Prince George's Cty., MD, 475 F.3d 621, 627–28 (4th Cir. 2007) (quotations and citations omitted). As Franks instructed, a plaintiff cannot rest their basis for a constitutional violation on an officer's negligence or innocent mistake. 438 U.S. at 171, 98 S.Ct. 2674.

Here, Plaintiff has made no showing, nor has she forecast *any* evidence, that Harrison possessed the requisite intent to mislead the magistrate by omitting exculpatory evidence in seeking the arrest warrant. Instead, Plaintiff's arguments hinge on speculation and conjecture, asserting that a jury could infer the requisite intent or recklessness from the mere fact Harrison omitted her asserted innocence, including her purported alibi and vehicle registration. Plaintiff fails to indicate any legal authority that supports drawing an *inference* of mal intent based solely on the fact an officer omitted potentially exculpatory evidence during a probable cause hearing. Absent case law to support this argument, the Court declines to create it under this record. See Norton v. Tabron, 727 F. App'x 762, 765 (4th Cir. 2018) (affirming summary judgment where the plaintiff failed to adduce any evidence to support his bare assertions that the officers lied to the prosecutor, magistrate, or grand jury"). Nothing shows Harrison entertained any doubt as to the truth of his statements to the magistrate, and no evidence before this Court shows Harrison had obvious reasons to doubt the accurate of the information he reported. To the contrary, the record

---

been excluded. It would perforce result in perniciously prolix affidavits that would distract police officers from more important duties and render the magistrate's determination of probable cause unnecessarily burdensome. In addition, a broad duty of inclusion would turn every arrest or search into a warrant contest. Such consequences would, in turn, discourage reliance on warrants, a result the Supreme Court has stated should be avoided in shaping Fourth Amendment doctrine." Colkley, 899 F.2d at 303.

does not create any question of fact, as it is devoid of any evidence that Harrison misled the

magistrate, either intentionally or recklessly.

Where a plaintiff alleges an officer has omitted material facts, the law makes clear that the

plaintiff must also establish that but for such omission, there would have been no probable cause.

> Franks requires that the omissions be necessary to the neutral and disinterested
> magistrate's finding of probable cause. Evans v. Chalmers, 703 F.3d 636, 650 (4th
> Cir. 2012) (quoting Miller, 475 F.3d at 628). The omission "must be such that its
> inclusion in the affidavit would defeat probable cause for arrest." United States v.
> Colkley, 899 F.2d 297, 301 (4th Cir. 1990). The court must insert the facts
> recklessly omitted and determine whether or not the "corrected" warrant affidavit
> would establish probable cause. Miller, 475 F.3d at 628. If the "corrected" warrant
> affidavit establishes probable cause, the omissions do not amount to a constitutional
> violation. Id.

Osborne v. Georgiades, 679 F. App'x 234, 239 (4th Cir. 2017). Taking the evidence undisputedly

presented to the magistrate judge here and adding in the evidence regarding Plaintiff's alibi,

including the receipts, the Court finds these omissions do not negate probable cause. In doing so,

the Court considers materials Plaintiff has submitted in her motion for judicial notice, including

mileage and estimated travel times on the day of the incident, all of which were prepared by

Plaintiff's counsel for purposes of this summary judgment motion. (See Doc. No. 15 and exhibits

thereto). While the timing of Plaintiff's travels and whereabouts might raise *reasonable doubt* at

trial as to whether Plaintiff committed the offense, nothing in the record indicates this evidence

contradicts the evidence presented to the magistrate or negates the finding of probable cause. As

explained above, sufficient facts within Harrison's knowledge establish probable cause, including:

1) the testimony from *three* Hospital employees who separately identified "Moe" as the person in

the Target footage who had used the victim's credit card; 2) one of the Hospital employees

indicated "Moe" to be Plaintiff and showed Harrison a Facebook profile picture of Plaintiff; 3) a

statement from one of the Hospital employees stating that "Moe" sometimes drove a white SUV;

4) the video surveillance from both Bojangles and Target showing a white SUV; 5) Harrison's observation of the similarity of the glasses worn by the woman in the Facebook profile picture of "Moe" and the woman in the Target images; 6) Plaintiff's former employment with the Hospital and knowledge of the facility; 7) Plaintiff's recent visit to the Hospital a week prior to the incident; 8) Harrison's knowledge that Plaintiff spent significant time in her car alone on the morning of the incident; and 9) the gap in time during which Plaintiff's friend and purported alibi witness was not with her on the morning of the incident. Thus, even if Harrison had informed the magistrate of Plaintiff's alleged travels throughout the morning of the incident to various businesses and the travel times between each stop, probable cause would still have existed to support issuance of the arrest warrant.

### 3. Qualified Immunity

Because probable cause exists, Plaintiff cannot establish a Fourth Amendment violation. See Quarles v. Weeks, 815 Fed. Appx. 735, 738 (2020) (citation omitted) (holding that "because [the plaintiff's] arrest was supported by probable cause, and did not violate [the plaintiff's] Fourth Amendment Rights, [the officer] was entitled to qualified immunity"). However, even if probable cause was lacking, the Court finds that under the record in this case and applicable law, Harrison is entitled to qualified immunity. "Even if the existence of probable cause were a close question, the qualified immunity standard gives ample room for mistaken judgments." Durham, 690 F.3d at 189 (internal quotation omitted).

> Qualified immunity shields government officials from liability in a § 1983 suit as long as their conduct has not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right to be free from unreasonable seizures, and (2) whether the right was clearly established at the time of the alleged event such that "a reasonable officer would have understood

16

that his conduct violated the asserted right." Miller v. Prince George's County, 475 F.3d 621, 627 (4th Cir. 2007) (quoting Saucier v. Katz, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). The answer to both questions must be in the affirmative to defeat the officer's entitlement to immunity. Id.

Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 555 (4th Cir. 2017), as amended (Aug. 22, 2017).

> In our assessment of whether Atkins is entitled to qualified immunity, however, the question is not whether there actually was probable cause for the murder warrant against Isidro, but *whether an objective law officer could reasonably have believed probable cause to exist*. Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir. 1991). As the Supreme Court stated in Malley v. Briggs, "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." (citations omitted). 475 U.S. at 344–45, 106 S.Ct. 1092. In Anderson v. Creighton, the Court set forth the underlying rationale for this favorable standard, observing that "[i]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . like other officials who act in ways they reasonably believe to be lawful[,] [they] should not be held personally liable." 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Gomez v. Atkins, 296 F.3d 253, 261–62 (4th Cir. 2002) (emphasis added).

In considering this threshold question regarding what a reasonable officer could have believed, the uncontroverted evidence before this Court indicates a reasonable officer could have believed probable cause to exist. Despite Plaintiff's protested innocence and purported alibi, the evidence reasonably connects Plaintiff to the larceny and subsequent use of the victim's credit cards. As stated above, nothing in this record indicates Harrison had any reason to doubt the truth of the information presented to the magistrate. Plaintiff has failed to present a forecast of evidence from which a reasonably jury could conclude Harrison deliberately or recklessly withheld material information in order to obtain an arrest warrant for Plaintiff in the absence of probable cause. Harrison acted reasonably in investigating the crime, and any deficiencies in the evidence or investigation were not so glaring as to deny Harrison the protection of qualified immunity. Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (recognizing that qualified immunity "gives government

17

officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law" (internal quotation marks omitted)); see also Norton, 727 F. App'x at 765. For these reasons, summary judgment for Harrison is appropriate.

**B.     Plaintiff's Claim for Malicious Prosecution against Harrison**

Turning to Plaintiff's state law claim for malicious prosecution, the existence of probable cause to arrest Plaintiff renders her malicious prosecution claim meritless. To establish a claim for malicious prosecution under North Carolina law, a plaintiff must show that the defendant caused a criminal proceeding against the plaintiff without probable cause and with malice, and that the prosecution terminated in the plaintiff's favor. See Evans v. Chalmers, 703 F.3d 636, 657 (4th Cir. 2012). In determining whether probable cause exists, the North Carolina Supreme Court employs the same totality of the circumstances test utilized in a Fourth Amendment probable cause analysis. State v. Allman, 794 S.E.2d 301, 303 (N.C. 2016). Under North Carolina law, the issuance of an arrest warrant or indictment does not bar malicious prosecution claims as a matter of law. See Turner v. Thomas, 794 S.E.2d 439, 445 (N.C. 2016); Johnson v. Whittington, 255 S.E.2d 588, 590 (N.C. Ct. App. 1979). However, because Plaintiff's arrest was supported by probable cause, and she cannot establish that Harrison acted with malice when obtaining the arrest warrant, summary judgment is appropriate. See also Quarles, 815 F. App'x at 738.

**C.     Plaintiff's Claim for Negligence Against Harrison and City of Monroe**

Defendants argue Plaintiff's negligence claims against Harrison and the City of Monroe also fail because probable cause existed. In response, Plaintiff reasserts her arguments above, specifically that Harrison failed to investigate Plaintiff's exculpatory evidence, presented "speculative" grounds for probable cause, and – in doing so – acted deliberately or recklessly. The

18

Court has already rejected these arguments. As the North Carolina Supreme Court has recognized, a claim that a police officer's investigation was negligently conducted fails if the officer nonetheless had probable cause for arrest. Best v. Duke University, 448 S.E.2d 506, 512 (N.C. 1994) (plaintiff could not "present sufficient evidence of negligent conduct" where "probable cause existed as a matter of law for plaintiff's arrest"). Plaintiff has failed to forecast any evidence sufficient for a reasonable jury to find in her favor on her negligence claims.

## IV.    CONCLUSION

In short, the undisputed forecast of evidence establishes probable cause for Plaintiff's arrest. Further, Plaintiff has failed to present a forecast of evidence from which a reasonable jury could conclude that the Harrison deliberately or recklessly withheld material information in order to obtain an arrest warrant for Plaintiff in the absence of probable cause. As such, Plaintiff cannot establish that her arrest was "pursuant to legal process that was not supported by probable cause." Durham, 690 F.3d at 190. For these reasons, Harrison is also entitled to qualified immunity with respect to Plaintiff's § 1983 claim. Because there was, as a matter of law, sufficient probable cause for the arrest, Plaintiff's state law claims under North Carolina law must also fail.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Judicial Notice (Doc. No. 14) and Defendant's Motion for Summary Judgment (Doc. No. 8) are GRANTED. The Clerk is respectfully directed to issue judgment in accordance with this Order and CLOSE THIS CASE.

IT IS SO ORDERED.

Signed: October 20, 2020

Frank D. Whitney
United States District Judge

19